UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Xavier Longwa,<br>        *Plaintiff*, | Civil No. 3:07cv733 (JBA) |
|         *v.* | |
| Jorge Larregui, Sean Lynch, and the City of<br>Bridgeport,<br>        *Defendants*. | September 9, 2011 |

RULING ON MOTION FOR SUMMARY JUDGMENT

On August 29, 2007, Plaintiff Xavier Longwa filed an Amended Complaint against Defendants the City of Bridgeport ("City") and Bridgeport Police Officers Jorge Larregui and Sean Lynch claiming violations of his Fourth and Fourteenth Amendment rights and Article 1, §§ 7, 9, and 10 of the Connecticut Constitution, as well as common law negligence. Plaintiff's claims arise from a December 8, 2005 incident during which Defendants Larregui and Lynch shot into a vehicle that Plaintiff rode in as a passenger, hitting Plaintiff in the right leg, and thereafter arrested Plaintiff. Defendants previously moved [Doc. # 34] for summary judgment on August 11, 2008, which motion was denied [Doc. # 35] as untimely and for failure to comply with the pre–filing conference requirement. The Court administratively closed [Doc. # 37] this case on August 21, 2008 pursuant to Defendants' motion to stay and reopened [Doc. # 43] the case on August 16, 2010. Defendants now move [Doc. # 47] for summary judgment on all counts of Plaintiffs' Amended Complaint. For the reasons stated below, Defendants' motion will be granted.

I.      Material Facts

On December 8, 2005, Bridgeport Police Officer Jorge Larregui was on duty in a marked Bridgeport Police Department ("BPD") cruiser at the corner of Seaview Avenue and

Ogden Street Extended in Bridgeport, standing by to assist Officer V. Larrica, who had received information regarding a possible stolen car. (Larregui Incident Report, Ex. A to Defs.' Loc. R. 56(a)1 Stmt. at 1.) Officer Larregui saw a black Volkswagen Jetta traveling at a high rate of speed westbound on Ogden from the area where officers were searching for the stolen car; the Jetta failed to stop at the intersection of Seaview and Ogden and turned right on Seaview. (*Id.*) After entering the Jetta's license plate number into his computer and while waiting for a response, Officer Larregui saw the Jetta turn left on Boston Avenue. (*Id.*) The results of the registration search indicated that the Jetta was stolen and Officer Larregui proceeded to follow the car down Boston Avenue in his cruiser. (*Id.*)

The Jetta turned right on East Main Street and then right on Pennsylvania Avenue, before turning into a parking lot for "The Ritz." (*Id.*; Larregui Dep., Ex. D to 56(a)1 Stmt. at 18:4–19:25.) As the Jetta made a U–turn in the parking lot, Officer Larregui drove his cruiser into the lot, meeting the Jetta "nose–to–nose" and blocking it from exiting the lot. (Larregui Incident Report at 1; Larregui Dep. at 19:21–20:4; Newkirk Dep., Ex. B to 56(a)1 Stmt. at 41:23–25.) Officer Larregui got out of his cruiser, drew his service weapon, began to walk towards the Jetta, and told the driver to stop and turn off the car. (Larregui Incident Report at 1; Larregui Dep. at 20:22–21:20; Newkirk Dep. at 42:7–15, 44:15–25; Longwa Dep., Ex. C to 56(a)1 Stmt. at 41:20–42:11.) Officer Geremia also entered the parking lot in a cruiser in which Defendant Officer Sean Lynch was a passenger. (Larregui Incident Report at 1; Lynch Incident Report, Ex. A to 56(a)1 Stmt. at 1.) Officer Lynch exited the cruiser and approached the Jetta on the driver's side, with Officer Larregui to his left, and drew his service weapon at some point after getting out of the cruiser. (Lynch Incident Report at 1; Lynch Dep., Ex. F to 56(a)1 Stmt. at 27:21–29:21.)

Officers Larregui and Lynch and Roland Dewitt, witness to the events in question, describe the ensuing events differently than Plaintiff Longwa, who sat in the passenger seat of the Jetta, and Robert Newkirk, who drove the Jetta.  Officer Larregui testified during his deposition that as he approached the Jetta from the front, Newkirk "all of a sudden put[] the car in reverse," hit a vehicle parked behind it, and then "put[] the car in drive and heads dead on me." (Larregui Dep. at 26:15–27:5.)  According to Larregui, he was in the direct path of the Jetta, on the "passenger side area" as the car began to move forward.  (*Id.* at 27:6–22.) Larrengui testified that he feared for his life, and as the car moved towards him he began to shoot at the driver.  (*Id.* at 27:23–28:4.)  He explained in his Incident Report that he "had direct eye contact with the operator of the Jetta and it appeared that he was not going to give up, and that he was determined to get away."  (Larregui Incident Report at 2.)

Lynch testified similarly, stating that the Jetta spun its wheels as it began to move forward, at which point he ran from the Jetta towards his cruiser and heard gunfire to his left. (Lynch Dep. at 33:20–34:15.)  Lynch then began to shoot at the driver. (*Id.* at 34:16–18, 50:23–51:7.)  Lynch wrote in his Incident Report that "[f]earing that Officer Larregui was in imminent danger of death I discharged my service weapon at the driver to stop the threat." (Lynch Incident Report at 2.)  Roland Dewitt, in a statement to Detective Louis Cortello, explained that Officer Larregui was on the passenger side in front of the Jetta and that Newkirk drove "straight at" him, at which point Larregui and Lynch shot at Newkirk. (Dewitt Stmt., Ex. D to 56(a)1 Stmt. at 2.)  Dewitt stated that the officers did not shoot when Newkirk backed up in the parking lot, but "only shot when that driver drove straight at the Police Officer."  (*Id.*)

3

Newkirk testified, however, that the officers shot at him before he put the Jetta into drive to go forward, and that he drove forward to leave because he "was being shot at." (Newkirk Dep. at 53:6–15.)  He also stated that the gunshots came from the passenger side of the Jetta and that when he put the car in drive he had "a clear opening to drive off."  (*Id.* at 59:6–61:18.)  Longwa testified in his deposition that he told Newkirk to "pull off," or drive off, because the officers were shooting at them, and only then did Newkirk put the Jetta in drive and move forward.  (Longwa Dep. at 50:4–18.)  Longwa also testified that he believed that one of Larregui's shots, from the passenger side of the Jetta, struck him in the leg.  (*Id.* at 53:12–22.)

The Jetta passed between Officers Larregui and Lynch, with Larregui on the passenger side and Lynch on the driver's side.  (Larregui Dep. at 29:24–31:17.)  Officer Larregui did not recall whether he fired any shots into the Jetta as it passed him.  (*Id.* at 31:8–17.)  The Jetta drove over the sidewalk and across East Main Street to Waverly Place. (Larregui Incident Report at 2.)  Larregui and Lynch returned to their cruisers and followed the Jetta down Waverly Place and left on Noble Avenue until the Jetta lost control and struck a utility pole at the corner of Noble and Livingston Place, coming to a stop.  (*Id.* at 2; Lynch Incident Report at 2.)  Larregui ran to the passenger side of the Jetta, where Plaintiff Longwa was on the ground.  (Larregui Incident Report at 2.)  Officer Larregui placed Longwa in handcuffs and Longwa stated that he had been shot.  (*Id.*)  Larregui apologized to Longwa for shooting him.  (Longwa Dep. at 53:12–22.)

II.    Discussion[1]

In moving for summary judgment, Defendants argue that they did not violate Longwa's Fourth Amendment rights (Count 1) because the Officers' actions did not constitute a constitutionally cognizable seizure; they did not violate Longwa's substantive due process rights (Count 2) because the Officers' actions did not shock the conscience; Defendant Officers are entitled to qualified immunity on the excessive force claims; the City is not liable under *Monell* (Count 5) because there are no facts in the record suggesting that the alleged violation resulted from a City custom or policy; and the City is not liable under Conn. Gen. Stat. § 7-465 (Count 7) because that section does not provide a direct cause of action against a municipality.  Defendants also argue that the Court should address the merits of the state–law assault and battery and negligence claims (Counts 3 and 4), and that those claims are meritless because the Officers' use of force was not unreasonable.  Plaintiff does not object to the Defendants' Motion as to his *Monell* claim,[2] but argues that genuine issues of material fact as to the Defendant Officers' use of force preclude summary judgment on all other counts.

---

[1] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

[2] Because Plaintiff does not object to the motion for summary judgment as to the fifth count of his Amended Complaint, summary judgment is granted in Defendants' favor as to this count.

A.      Count One: Fourth Amendment

"The Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified, or outrageous." *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998). Therefore, "the first step in any Fourth Amendment claim . . . is to determine whether there has been a constitutionally cognizable seizure." *Id.* Such a seizure "requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The shooting of a fleeing suspect can constitute a Fourth Amendment seizure, and "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful." *Id.* (internal citations omitted). "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 596–97.

In *Medeiros*, Connecticut state troopers intentionally fired upon and struck a suspect fleeing in a van with hostages but unintentionally struck a hostage as well; the Second Circuit considered whether shooting the hostage constituted a Fourth Amendment seizure. 150 F.3d at 166–67. The court found instructive the First Circuit's decision in *Landol–Rivera v. Cosme*, 906 F.2d 791, 795 (1st Cir. 1990), which held that "[a] police officer's deliberate decision to shoot at a car containing a robber and a hostage for the purpose of stopping the robber's flight does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern." The Second Circuit also relied on the Fourth Circuit's

6

reasoning in *Rucker v. Hartford County*, 946 F.2d 278, 281 (4th Cir. 1991), which declined to interpret *Brower* to mean "that a seizure occurs just so long as the act of restraint itself is intended (here the act of shooting) though it restrains one not intended to be restrained." The court held in *Medeiros* that because the state troopers did not intend to shoot the hostage, they did not intend to restrain his movement, and thus did not seize him within the meaning of the Fourth Amendment. 150 F.3d at 168.

Plaintiff argues that factual disputes as to when and under what circumstances the Officers fired upon the Jetta preclude summary judgment on his Fourth Amendment claim. Although the parties offer different accounts of when and from what angle Officers Larregui and Lynch fired at Newkirk, Plaintiff does not argue that the Officers actually intended to shoot him, only that they "opened fire" on the Jetta. (*See* Opp'n at 1–4.)  Plaintiff relies on *Cowen v. Breen*, 352 F.3d 756, 762–63 (2d Cir. 2003), in which the Second Circuit held that a factual dispute regarding when an officer fired upon the decedent, who was driving a Camaro in the close vicinity of the officer, and thus the extent to which the officer's life or person was in danger, precluded summary in the defendant–officer's favor on the plaintiff–adminstratrix's Fourth Amendment excessive force claim.  *Cowen* is distinguishable, however, because Plaintiff was not the driver here and does not argue that Officers Larregui and Lynch intended to hit him even if their intended target may have been the driver.  Without the Officers' intentional termination of Longwa's freedom of movement, there can be no Fourth Amendment violation, regardless of the dispute over the reasonableness of the Officers' decision to fire at Newkirk.  As in *Medeiros*, 150 F.3d at 168, the Officers did not intend to shoot Longwa, and thus did not seize him within the meaning of the Fourth Amendment.

Plaintiff's counsel claimed at oral argument that Longwa's arrest following the shooting and subsequent crash, although not pled as a cause of action, evidences the Officers' intent to acquire physical control over Longwa at the time of the shooting.  However, Plaintiff concedes that "[i]t is undisputed that Officer Lynch had no knowledge why the Plaintiff was in the vehicle" and that "Officer Larregui did not even know that the Plaintiff was in the vehicle until after it had crashed."  (Opp'n at 1–2.)  Longwa's subsequent arrest does not convert an unintended shooting into a seizure; the Officers' decision to acquire physical control over Longwa after the crash does not change the fact that the bullets fired from the Officers' guns were not intentionally applied to Longwa.  *See Brower*, 489 U.S. at 596–97.  Because the shooting which forms the basis of Longwa's excessive force claim was not a use of force through means intentionally applied, Longwa's subsequent arrest does bring the prior shooting by the Officers within the realm of the Fourth Amendment.

Defendants' motion for summary judgment on the first count of Longwa's Amended Complaint is therefore granted.

B.      Count Two: Substantive Due Process

Defendants argue that they are entitled to summary judgment on Longwa's second count, violation of substantive due process, because none of the material facts support Longwa's claims that the Officers' actions were shocking to the conscience.  (Mem. Supp. [Doc. # 47–1] at 15–17.)  In response, Plaintiff argues that the genuine issues of material fact as to whether the Officers intended to seize him preclude summary judgment on this count because if the Officers did not intend to seize him, "then a Fourteenth Amendment Analysis applies."  (Opp'n at 5.)  Plaintiff does not otherwise argue how the Officers' actions meet the shocks–the–conscience standard.

8

"[W]here no seizure within the meaning of the Fourth Amendment has taken place, substantive due process analysis is appropriate." *Medeiros*, 150 F.3d at 169 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998)). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847. Whether conduct shocks the conscience is an inquiry independent of the reasonableness standard under tort law. *Id.* at 855. Under the shocks–the–conscience standard, substantive due process "does not afford a cause of action for police negligence," nor does it impose constitutional liability for "an intermediate level of fault, such as recklessness." *Medeiros*, 150 F.3d at 170 (internal citations omitted).

The Second Circuit in *Medeiros* concluded that the state troopers' conduct in firing upon the fleeing suspect, and in the process striking one of the hostages did not shock the conscience. *Id.* The Supreme Court similarly held in *Lewis* that a police officer's conduct in engaging in a high speed chase with a motorcycle in a residential neighborhood—which ended in the death of the motorcycle passenger when the motorcycle tipped over and officers' patrol car skidded into him—did not shock the conscience even if "prudence would have repressed" his actions. 523 U.S. at 855. The Court held that "the officer's instinct was to do his job as a law enforcement officer, not to induce . . . lawlessness, or to terrorize, cause harm, or kill," and that there was no reason to believe that enforcement considerations that served as the basis of the decision "were tainted by an improper or malicious motive." *Id.*

The disputed factual issues as to whether the stolen Jetta was moving towards or away from Officers Larregui and Lynch when they fired at Newkirk may implicate the reasonableness analysis as discussed in *Cowen*, 352 F.3d at 762–63. However, nothing in the

9

record suggests—and Longwa does not argue—that the Officers fired upon the Jetta to induce "lawlessness, or to terrorize, cause harm, or kill" or with any malicious motive in mind.  Instead, Longwa argues only that these factual disputes preclude the determination that the Officers' use of deadly force was reasonable.  However, where, as in this case, "unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Lewis*, 523 U.S. at 853 (internal quotation marks and citations omitted).  The Officers' decision to fire on the Jetta, even if made when Newkirk was backing up in order to escape as Newkirk claims, may show conduct that was not reasonable or prudent, but when considered in light of the need for instant judgment in response to quickly evolving circumstances, does not shock the conscience.  If Newkirk's claims support an argument that the Officers' decision was unreasonable, they nonetheless do not demonstrate that it was made out of any instinct other than "to do [their] job as [] law enforcement officer[s]." *Id.* at 855.

Defendants' motion for summary judgment on Plaintiffs' substantive due process claim is therefore granted.

C.      Connecticut Law Claims

Although Defendants are entitled to summary judgment in their favor on all of Plaintiff's federal law claims, they ask the Court to exercise its supplemental jurisdiction over Plaintiffs' state law claims.[3]   Plaintiff, however, asks the Court to "decline to exercise

---

[3] Counts Three and Four sound in Connecticut state law as they claim assault and battery and negligence, respectively.  Plaintiff argues in his Opposition that Count Six is a direct action against the city for failure to properly instruct its officers regarding the use of deadly force, arrest and detention procedures, and the criteria for placing a subject under

jurisdiction over the . . . state law claims in the event the federal claims are disposed of." Given Plaintiff's request that the Court dismiss his state law claims in the absence of any remaining federal claims, the Court will decline to exercise supplemental jurisdiction over Counts Three, Four, Six, and Seven.  Those counts are dismissed.

III.    Conclusion

        For the reasons stated above, Defendants' motion [Doc. # 47] for summary judgment is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of September, 2011.

---

arrest and that he "assumes that the Defendants consider this Count to allege State law claims."  (Opp'n at 7.)  Defendants do not object to this characterization in their reply. Count Seven is an indemnity claim against the City of Bridgeport pursuant to Conn. Gen. Stat. § 7–465.  As summary judgment should be granted in Defendants' favor on all of the federal claims, this Count can only move forward on the basis of alleged state law violations.